IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
The Honorable William J. Martínez

Civil Action No. 13-cv-03102-WJM

IRA MINER,

     Applicant,

v.

JAMES FALK, and
THE ATTORNEY GENERAL OF THE STATE OF COLORADO,

     Respondents.

---

## ORDER DISMISSING APPLICATION IN PART AND DIRECTING ANSWER

---

     Applicant, Ira Miner, is a prisoner in the custody of the Colorado Department of Corrections who currently is incarcerated at the correctional facility in Sterling, Colorado.  On November 14, 2013, Mr. Miner filed *pro se* an Application for a Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) challenging his convictions and sentence in Jefferson County, Colorado, district court case number 06CR454.

     On November 15, 2013, Magistrate Judge Boyd N. Boland entered an order (ECF No. 3) directing Respondents to file a pre-answer response limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if Respondents intend to raise either or both of those defenses in this action.  On December 16, 2013, after being granted an extension of time, Respondents filed their pre-answer response (ECF No. 9).

On December 26, 2013, Mr. Miner filed both a motion (ECF No. 10) for an extension of time to file a reply to the pre-answer response and a motion (ECF No. 11) to amend the habeas corpus application providing the amendments he wished to make to claims seven, eight, nine, and ten.  On December 27, 2013, Magistrate Judge Boyd N. Boland entered a minute order (ECF No. 12) granting the motion to amend the habeas corpus application.  However, Mr. Miner was informed he would not be permitted to amend his application in a piecemeal manner.  Instead, he would be allowed thirty days in which to submit a final amended application on the proper, Court-approved form for filing an Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 that contained all the claims he wished to assert in this action.  The December 27 minute order warned Mr. Miner that failure to do so within the time allowed would result in the Court proceeding with the Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 1) he originally filed on November 14, 2013, and the pre-answer response (ECF No. 9) Respondents submitted on December 16, 2013.

Applicant was directed to obtain the Court-approved form for filing an Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (with the assistance of his case manager or the facility's legal assistant), along with the applicable instructions, at www.cod.uscourts.gov, and to use that form in filing the final amended application.  The motion (ECF No. 10) filed on December 26, 2013, for an extension of time to file a reply to the pre-answer response (ECF No. 9) filed on December 16, 2013, was denied because Applicant was being given the opportunity to file a completely amended application.

2

On January 24, 2014, Mr. Miner filed an amended Application for Writ of Habeas Corpus Pursuant to 28 U.S.C. § 2254 (ECF No. 13) challenging the validity of his conviction and sentence in Jefferson County District Court case number 06CR454.  On January 27, 2014, Magistrate Judge Boland entered an order (ECF No. 14) directing Respondents to file a second pre-answer response to the final amended application that was limited to addressing the affirmative defenses of timeliness under 28 U.S.C. § 2244(d) and exhaustion of state court remedies pursuant to 28 U.S.C. § 2254(b)(1)(A) if Respondents intended to raise either or both of those defenses in this action.  On February 10, 2014, Respondents filed their response (ECF No. 15) to the second order for a pre-answer response, utilizing exhibits A through J submitted as part of the original pre-answer response (ECF No. 9).  On March 26, 2014, after being granted an extension of time, Mr. Miner filed a reply (ECF No. 19).  On April 16, 2014, Mr. Miner filed an addendum (ECF No. 20) to the reply.

The Court must construe Mr. Miner's filings liberally because he is not represented by an attorney.  *See Haines v. Kerner*, 404 U.S. 519, 520-21 (1972); *Hall v. Bellmon*, 935 F.2d 1106, 1110 (10th Cir. 1991).  However, the Court should not be an advocate for a *pro se* litigant.  *See Hall*, 935 F.2d at 1110.  For the reasons stated below, the Court will dismiss the habeas corpus action in part.

## I. BACKGROUND

Following a jury trial, Mr. Miner was convicted in Jefferson County District Court case number 06CR454 of attempted first-degree murder (after deliberation) and first-degree assault, both second-degree felonies, and robbery, a third-degree felony.  ECF

No. 9, ex. C, attachment A (presentence report) at 14.  He is serving a total sentence of

forty-eight years, two concurrent thirty-two year sentences on the attempted murder and

assault charges and a consecutive sixteen-year sentence on the robbery charge.  ECF

No. 15 at 2.  On April 15, 2010, the Colorado Court of Appeals affirmed his conviction

and sentence on direct appeal.  ECF No. 9, ex. H (*People v. Miner*, No. 07CA0488

(Colo. Ct. App. Apr. 15, 2010) (unpublished) (*Miner I*)).  On August 9, 2010, the

Colorado Supreme Court denied his petition for writ of certiorari.  ECF No. 9, ex. F.

On November 12, 2010, Mr. Miner filed in the trial court a combination motion for

sentence reconsideration pursuant to Rule 35(b) of the Colorado Rules of Criminal

Procedure and reduction of mandatory sentence pursuant to Colo. Rev. Stat. § 18-1.3-

406(1)(a), which the trial court denied on December 7, 2010.  ECF No. 9, ex. A (state

court register) at 3.  Mr. Miner did not appeal.

On May 19, 2011, he filed a postconviction motion pursuant to Rule 35(c) of the

Colorado Rules of Criminal Procedure, which the trial court denied without a hearing on

June 22, 2011.  ECF No. 9, ex. A at 3.  On January 17, 2013, the Colorado Court of

Appeals affirmed.  ECF No. 9, ex. D (*People v. Miner*, No. 11CA1451 (Colo. Ct. App.

Jan. 17, 2013) (unpublished) (*Miner II*)).  On August 26, 2013, the Colorado Supreme

Court denied certiorari review.  ECF No. 9, ex. B.

As previously stated, on November 14, 2013, Mr. Miner filed his original § 2254

habeas corpus application (ECF No. 1) in this Court.  After Respondents filed their

initial pre-answer response (ECF No. 9), the Court allowed Applicant to submit an

amended application, which he filed on January 24, 2013 (ECF No. 13), and on

January 27, 2014, entered an order (ECF No. 14) directing Respondents to file a

4

second pre-answer response.  On February 10, 2014, Respondents filed their response (ECF No. 15) to the second order for a pre-answer response.  Respondents concede the instant action is filed within the one-year limitation period in 28 U.S.C. § 2244(d). Therefore, the Court need not address further the one-year limitation period.

Mr. Miner asserts three claims that Respondents divide into numerous subclaims as follows:

As claim 1, Mr. Miner argues that the trial court "did not have jurisdiction" over the case (ECF No. 13 at 5) because:

(a)     Applicant was arrested at gunpoint and "in fear of physical retribution" by arresting officers, such that any statements he made during the arrest were coerced (*id.*);

(b)     Arresting officers failed to advise him of his rights under *Miranda v. Arizona*, 384 U.S. 436 (1966), prior to asking for his consent to search his home (ECF No. 13 at 5);

(c)     The search of his home was without a warrant, and the consent of his wife was coerced "under Color of Authority" in violation of constitutional rights and a state statute (*id.*);

(d)     There was insufficient evidence that he intended to kill the victim; the murder charge was based on the victim's age "and other prejudicial assumptions" (ECF No. 13 at 6); and

(e)     The victim's identification of Applicant was "coerced" when police told her that defendant was her attacker (*id.*).

As claim 2, Mr. Miner aggregates different theories and factual allegations as follows:

(a)     Ineffective assistance of counsel because trial counsel:

(i)     Had no experience representing criminal defendants (ECF No. 13 at 7);

(ii)     Made "no real attempt" to devote the time necessary to communicate adequately with him (*id.*);

(iii)    Failed to introduce "key elements and specific facts" that would have influenced the jury in his favor; the jury was "left ignorant" of "most of [Applicant's] information" (*id.*);

(iv)    Failed to conduct sufficient pretrial investigation to:

(1)     seek exclusion of "any mention" of the word "homicide" from the trial (id.);

(2)     discover a videotaped confession made in the absence of counsel (*id.*);

(3)     request an evaluation of the victim's mental condition "to test the credibility of her statements and . . . what actually happened at the scene" (ECF No. 13 at 7-8);

(4)     confront the victim "about [the] alleged offense(s)," which would have established the absence of an intent to kill (ECF No. 13 at 7-8 & n.1);

(v)     Requested continuances and delays, resulting in the deprivation of his speedy trial right under 18 U.S.C. § 3161(a) (ECF No. 13 at 8); and

(vi)    Cumulative error based upon ineffective assistance of counsel, prosecutorial misconduct, and trial court error (ECF No. 13 at 8 n.1);

(b)     Insufficient evidence that Applicant was "involved in anything more than a simple theft[]" (ECF No. 13 at 9);

(c)     Prosecutorial misconduct:

(i)     In charging attempted first-degree murder solely for the purpose of "aggrandizement in a simple aggravated theft case" (*id.*);

(ii)    In:

(1)     withholding information that juror W. had mentioned to the prosecution, after trial, something about looking at *Gray's Anatomy* during trial (*id.*);

(2)     subsequently having an ex parte conversation with juror W. (*id.*); and

(3)     failing to seek a mistrial based on juror W.'s alleged misconduct (*id.*);

(d)     Judicial bias, in that the trial judge:

(i)     Erroneously ruled that Applicant validly waived his *Miranda* rights prior to his police interview, even though Applicant did not understand that a lawyer would be appointed for him at state expense if he requested one, thereby permitting introduction of Applicant's videotaped statement made in the absence of counsel (ECF No. 13 at 9-10);

(ii)     Questioned jurors individually, from the bench, about possible exposure to extraneous information as a result of juror W.'s disclosure, without permitting Applicant (or the prosecution) to examine or cross-examine directly and confront the jurors, and instead "censored" questions submitted by the parties (ECF No. 13 at 10-11);

(iii)     Colluded with the prosecution to overlook juror W.'s alleged misconduct (ECF No. 13 at 9-10);

(iv)     Erroneously prohibited the parties from contacting jurors to investigate their possible exposure to extraneous information (ECF No. 13 at 10-11); and

(v)     Failed to declare a mistrial upon learning that any juror might have consulted extraneous information (ECF No. 13 at 11);

(e)     The jury was exposed to extraneous information, as evidenced by a comment by juror W. in a post-trial discussion with one of the prosecutors making reference to looking at *Gray's Anatomy* (ECF No. 13 at 9).

Claim three asserts violations of the Fourth Amendment in that:

(a)     Applicant was in "physical and psychological distress" and did not consent to the search at the time it was conducted (ECF No. 13 at 11); and

(b)     Officers obtained consent to search from Applicant's wife by being "deliberately deceitful" and "us[ing] pressure" on her to gain entry (*id.*);

Claim 3 also complains that all evidence seized during the search of his home

"was in violation of the Chain of Custody," and that the search essentially forced his

wife to testify against him (*id.*).

7

## II.  LEGAL STANDARDS

### A.    Exhaustion

Pursuant to 28 U.S.C. § 2254(b)(1), an application for a writ of habeas corpus may not be granted unless it appears that the applicant has exhausted state remedies or that no adequate state remedies are available or effective to protect the applicant's rights.  *See O'Sullivan v. Boerckel*, 526 U.S. 838 (1999); *Dever v. Kan. State Penitentiary*, 36 F.3d 1531, 1534 (10th Cir. 1994).  The exhaustion requirement is satisfied once the federal claim has been presented fairly to the state courts.  *See Castille v. Peoples*, 489 U.S. 346, 351 (1989).  Fair presentation requires that the federal issue be presented properly "to the highest state court, either by direct review of the conviction or in a postconviction attack."  *Dever*, 36 F.3d at 1534.

Furthermore, the "substance of a federal habeas corpus claim" must have been presented to the state courts in order to satisfy the fair presentation requirement. *Picard v. Connor*, 404 U.S. 270, 278 (1971); *see also Nichols v. Sullivan*, 867 F.2d 1250, 1252 (10th Cir. 1989).  Although fair presentation does not require a habeas corpus petitioner to cite "book and verse on the federal constitution," *Picard*, 404 U.S. at 278 (internal quotation marks omitted), "[i]t is not enough that all the facts necessary to support the federal claim were before the state courts."  *Anderson v. Harless*, 459 U.S. 4, 6 (1982) (per curiam).  A claim must be presented as a federal constitutional claim in the state court proceedings in order to be exhausted.  *See Duncan v. Henry*, 513 U.S. 364, 365-66 (1995) (per curiam).  The requirement of exhaustion of state remedies in federal habeas cases dictates that a state prisoner must "give the state courts a full

opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan*, 526 U.S. at 845.

"The exhaustion requirement is not one to be overlooked lightly." *Hernandez v. Starbuck*, 69 F.3d 1089, 1092 (10th Cir. 1995).  A state prisoner bringing a federal habeas corpus action bears the burden of showing he has exhausted all available state remedies for each particular claim.  *See Miranda v. Cooper*, 967 F.2d 392, 398 (10th Cir. 1992).  A blanket statement that state remedies have been exhausted does not satisfy this burden.  *See Olson v. McKune*, 9 F.3d 95 (10th Cir. 1993); *see also Fuller v. Baird*, 306 F. App'x 430, 431 n.3 (10th Cir. 2009) (stating that a bald assertion unsupported by court records is insufficient to demonstrate state remedies are exhausted).

## B.    Procedural Default

If a habeas applicant "failed to exhaust state remedies and the court to which the petitioner would be required to present his claims in order to meet the exhaustion requirement would now find the claims procedurally barred . . . there is a procedural default." *Coleman v. Thompson*, 501 U.S. 722, 735 n.1 (1991); *see also Harris v. Reed*, 489 U.S. 255, 269-70 (1989)); *Anderson v. Sirmons*, 476 F.3d 1131, 1139 n.7 (10th Cir. 2007) ("'Anticipatory procedural bar' occurs when the federal courts apply procedural bar to an unexhausted claim that would be procedurally barred under state law if the petitioner returned to state court to exhaust it.") (citation omitted).  A claim is precluded from federal habeas review if the claim has been defaulted in state court on an independent and adequate state procedural ground, unless the prisoner can

9

demonstrate cause for the default and actual prejudice as a result of the federal violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice. *Coleman*, 501 U.S. at 750; *Cummings v. Sirmons*, 506 F.3d 1211, 1224 (10th Cir. 2007) (citation omitted).

Application of this procedural-default rule in the habeas corpus context is based on comity and federalism concerns. *See Coleman*, 501 U.S. at 730. Mr. Miner's *pro se* status does not exempt him from the requirement of demonstrating either cause and prejudice or a fundamental miscarriage of justice. *See Lepiscopo v. Tansy*, 38 F.3d 1128, 1130 (10th Cir. 1994).

To demonstrate cause for his procedural default, Mr. Miner must show that some objective factor external to the defense impeded his ability to comply with the relevant procedural rule. *See Murray v. Carrier*, 477 U.S. 478, 488 (1986); *United States v. Salazar*, 323 F.3d 852, 855 (10th Cir. 2003). "Objective factors that constitute cause include interference by officials that makes compliance with the State's procedural rule impracticable, and a showing that the factual or legal basis for a claim was not reasonably available to [applicant]." *McClesky v. Zant*, 499 U.S. 467, 493-94 (1991) (internal quotation marks omitted). If Mr. Miner can demonstrate cause, he also must show "actual prejudice as a result of the alleged violation of federal law." *Coleman*, 501 U.S. at 750.

A fundamental miscarriage of justice occurs when "a constitutional violation has probably resulted in the conviction of one who is actually innocent." *Murray*, 477 U.S. at 496; *see also United States v. Cervini*, 379 F.3d 987, 991-92 (10th Cir. 2004). A

"substantial claim that constitutional error has caused the conviction of an innocent person is extremely rare." *Schlup v. Delo*, 513 U.S. 298, 324 (1995).  To demonstrate a fundamental miscarriage of justice, Mr. Miner first must "support his allegations of constitutional error with new reliable evidence – whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence – that was not presented at trial."  *Id.*  He then must demonstrate "that it is more likely than not that no reasonable juror would have convicted him in light of the new evidence."  *Id.* at 327.

## III.  ANALYSIS

### A.    Subclaim 1(a)

Mr. Miner argues in subclaim 1(a) that the trial court "did not have jurisdiction" over his criminal case because he was arrested at gunpoint and "in fear of physical retribution" by arresting officers, such that any statements he made during the arrest were coerced.  ECF No. 13 at 5.  Respondents concede that subclaim 1(a) was exhausted on direct appeal in *Miner I*, because Applicant argued that, although he consented to a search of his home just after his arrest, such consent was involuntary, thereby rendering the subsequent warrantless search a Fourth Amendment violation.  ECF No. 9, ex. I (appellant's opening brief in *Miner I*) at 20-21, ex. G (petition for writ of certiorari in *Miner I*) at 6-7.

### B.    Subclaims 1(b) and 1(c)

Mr. Miner also argues that the trial court "did not have jurisdiction" over his criminal case because 1(b) arresting officers failed to advise him of his *Miranda* rights prior to asking for his consent to search his home; and 1(c) the search of his home was

without a warrant, and the consent of his wife was coerced "under Color of Authority" in violation of constitutional rights and a state statute.  ECF No. 13 at 5.

The Court first will address subclaim 1(b).  Mr. Miner complained on direct appeal in *Miner I* that his waiver of *Miranda* rights prior to his interview at the police station was constitutionally invalid.  ECF No. 9, ex. I (appellant's opening brief in *Miner I*) at 26-31, G (petition for writ of certiorari in *Miner I*) at 8-9.  However, that argument is not the same as subclaim 1(b) he raises here, *i.e.*, that the trial court lacked jurisdiction over his criminal case because arresting officers failed to advise him of his *Miranda* rights prior to asking for his consent to search his home.

Mr. Miner did not argue on direct appeal in *Miner I*, ECF No. 9, ex. I, or on postconviction review in *Miner II*, ECF No. 9, ex. E (E1 through E8) (appellant's opening brief in *Miner II*), subclaim 1(b) that the trial court lacked jurisdiction over his criminal case because arresting officers were required but failed to give *Miranda* warnings before requesting his consent to search his home.

Similarly, Applicant did not fairly present to any court in *Miner I* or *Miner II* subclaim 1(c) that the trial court lacked jurisdiction over his criminal case because the search his home was without a warrant, and the consent of his wife was coerced.

Respondents therefore contend Mr. Miner failed to present subclaims 1(b) and 1(c) to any court in *Miner I* or *Miner II*.  Based upon a review of the opening briefs before the Colorado Court of Appeals in *Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E*)*, the Court agrees.  Mr. Miner cannot now present subclaims 1(b) and 1(c) to the state courts because the three-year limitation period on state postconviction

claims on non-class one felonies has expired, *see* Colo. Rev. Stat. § 16-5-402, and the subclaims would be barred under Colo. R. Crim. P. 35(c)(3)(VII).  Rule 35(c)(3)(VII) bars Mr. Miner from raising in a postconviction motion a claim that could have been presented in a prior appeal or postconviction proceeding.  As such, subclaims 1(b) and (c) are procedurally defaulted.  *See Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7.  Applicant has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default.

## C.     Subclaims 1(d) and 1(e)

Mr. Miner further argues that the trial court "did not have jurisdiction" over his criminal case for two reasons:  1(d) there was insufficient evidence that he intended to kill the victim because the murder charge was based on the victim's age "and other prejudicial assumptions," and 1(e) the victim's identification of Applicant was "coerced" when police told her that defendant was her attacker.  ECF No. 13 at 6.  Respondents argue Mr. Miner never fairly presented either subclaim to the state courts.  After review of the opening briefs before the Colorado Court of Appeals in *Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E*)*, the Court also agrees.  Although Mr. Miner generally alleges that the trial court exceeded its jurisdiction to convict him for first-degree murder (ECF  No. 9, ex. E1 at 17), he bases the claim on allegations that the information was defective because it failed to charge the elements of the offense (*id.* at 17-18), and not on the allegations of 1(d) or 1(e).

Mr. Miner cannot now present subclaims 1(d) and 1(e) to the state courts because the three-year limitation period on state postconviction claims on non-class

one felonies has expired, *see* Colo. Rev. Stat. § 16-5-402, and the subclaims would be barred under Colo. R. Crim. P. 35(c)(3)(VII). Rule 35(c)(3)(VII) bars Mr. Miner from raising in a postconviction motion a claim that could have been presented in a prior appeal or postconviction proceeding. As such, subclaims 1(d) and 1(e) are procedurally defaulted. *See Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7. Applicant has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default.

**D.      Subclaims 2(a)(i), 2(a)(ii), and 2(a)(iii)**

In claims 2(a)(i) through 2(a)(iii), Mr. Miner alleges he had ineffective assistance of trial counsel because trial counsel (2)(a)(i) lacked experience representing criminal defendants, (2)(a)(ii) made "no real attempt" to devote the time necessary to communicate adequately with him (ECF No. 13 at 7), and (2)(a)(iii) failed to introduce "key elements and specific facts" that would have influenced the jury in his favor; the jury was "left ignorant" of "most of [Applicant's] information." *Id.*

Respondents contend subclaims 2(a)(i), 2(a)(ii), and 2(a)(iii) are insufficiently pleaded because they fail to describe with specificity an unprofessional failure by defense counsel that raises a reasonable probability of a different outcome had counsel's performance been professionally reasonable. *See Strickland v. Washington*, 466 U.S. 668, 687-90 (1984) (describing the test for claims of ineffective assistance of counsel).

Pursuant to Rules 2(c)(1) and 2(c)(2) of the Rules Governing Section 2254 Cases in the United States District Courts (Section 2254 Rules), Mr. Miner must

"specify all [available] grounds for relief" and he must "state the facts supporting each ground." These habeas corpus rules are more demanding than the rules applicable to ordinary civil actions, which require only notice pleading. *See Mayle v. Felix*, 545 U.S. 644, 655 (2005). It is Applicant's job to point to a "real possibility" of constitutional error. *See Blackledge v. Allison*, 431 U.S. 63, 75 n.7 (1977); *Williams v. Coleman*, 722 F.2d 1048, 1051 (2d Cir. 1983) (habeas corpus is not a routine procedure to search for wrongs); *see also Brown v. Allen*, 344 U.S. 443, 537 (1953) (concurring opinion) ("He who must search a haystack for a needle is like to end up with the attitude that the needle is not worth the search."). Naked allegations of constitutional violations without any supporting factual allegations are not cognizable under § 2254. *See Ruark v. Gunter*, 958 F.2d 318, 319 (10th Cir. 1992) (per curiam).

Mr. Miner fails in the amended § 2254 application to describe with specificity or support with factual allegations his contention in claims 2(a)(i) through 2(a)(iii) that he had ineffective assistance of counsel. Because Mr. Miner offers only vague and conclusory allegations insufficient to show counsel's legal representation fell below an objective standard of reasonableness, and "the deficient performance prejudiced the defense," *Strickland* 466 U.S. at 687-88, claims 2(a)(i), 2(a)(ii), and 2(a)(iii) are unpersuasive and rejected as a grounds for habeas relief.

**E.    Subclaims 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), and 2(a)(v)**

In subclaims 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), and 2(a)(v), Mr. Miner alleges that he had ineffective assistance of counsel because trial counsel failed to conduct sufficient pretrial investigation to 2(a)(iv)(1) seek exclusion of "any mention" of the word

"homicide" from the trial (ECF No. 13 at 7), 2(a)(iv)(2) discover a videotaped confession made in the absence of counsel, and 2(a)(iv)(3) request an evaluation of the victim's mental condition "to test the credibility of her statements and . . . what actually happened at the scene" (ECF No. 13 at 7-8), and that he had ineffective assistance of counsel because trial counsel 2(a)(v) requested continuances and delays, resulting in the deprivation of his speedy trial right under 18 U.S.C. § 3161(a) (ECF No. 13 at 8).

Respondents argue Mr. Miner never fairly presented to the state courts any of the theories of ineffective assistance of counsel included in subclaims 2(a)(iv) or 2(a)(v). Respondents concede that in *Miner II*, and in his initial habeas corpus application, Mr. Miner did allege ineffective assistance of counsel in that counsel elected not to cross-examine the victim (ECF No. 1 at 6; ECF No. 9, ex. E2 at 8-9).  However, Respondents point out the claim that counsel was ineffective for electing not to cross-examine the victim is not substantially the same claim as those asserted in current subclaims 2(a)(iv) or 2(a)(v).  *See Gardner v. Galetka*, 568 F.3d 862, 872 (10th Cir. 2009) (claim raised in federal habeas petition based on an entirely different factual predicate not substantially the same as claim raised in state court).  As a result, Respondents argue that Mr. Miner is now procedurally barred from raising in the state courts subclaims 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), and 2(a)(v), which are anticipatorily defaulted.

After review of the opening briefs before the Colorado Court of Appeals in *Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E)*, the Court also agrees.

Mr. Miner cannot now present subclaims 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), and 2(a)(v) to the state courts because the three-year limitation period on state postconviction claims on non-class one felonies has expired, *see* Colo. Rev. Stat. § 16-

5-402, and these subclaims would be barred under Colo. R. Crim. P. 35(c)(3)(VII).  Rule

35(c)(3)(VII) bars Mr. Miner from raising in a postconviction motion a claim that could

have been presented in a prior appeal or postconviction proceeding.  As such,

subclaims 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), and 2(a)(v) are procedurally defaulted.  *See*

*Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7.  Applicant has not

made the necessary showing of cause and prejudice or actual innocence to excuse his

procedural default.

**F.     Subclaim 2(a)(iv)(4)**

In subclaim 2(a)(iv)(4), Mr. Miner alleges that he had ineffective assistance of

counsel because trial counsel failed to conduct sufficient pretrial investigation to

confront the victim "about [the] alleged offense(s)," which would have established the

absence of an intent to kill (ECF No. 13 at 8).  Construing subclaim 2(a)(iv)(4) as a

restatement of claim two in the original application (ECF No. 1 at 6), Respondents

contend Mr. Miner is arguing that trial counsel should have cross-examined the victim,

but elected not to do so.

Respondents concede that in *Miner II* Applicant fairly presented this subclaim to

the Colorado Court of Appeals as a violation of *Strickland*.  ECF No. 9, ex. E2 at 8-9.

However, they argue that subclaim 2(a)(iv)(4) is not exhausted because Mr. Miner failed

to present this subclaim to the Colorado Supreme Court.  *See* ECF No. 9, ex. C

(petition for writ of certiorari).  For the reasons stated below, the Court finds that

subclaim 2(a)(iv)(4) is exhausted.

Respondents are correct that, in order to exhaust state court remedies, a claim must be presented to the state's highest court if review in that court is available. *See O'Sullivan*, 526 U.S. at 845. However, "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available." *Id*. at 847-48. Therefore, if a state articulates that a certain avenue for relief is not part of its standard appellate review process, it is not necessary for a defendant to pursue that avenue in order to exhaust state remedies. *See id*.

The State of Colorado has articulated that review in the Colorado Supreme Court is not part of the standard state appellate review process. More specifically, the Colorado Appellate Rules provide that:

> In all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error. Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1. Pursuant to Colo. App. R. 51.1, the Court finds that review in the Colorado Supreme Court is not required to exhaust state remedies if the claim in question was presented fairly to, and relief was denied by, the Colorado Court of Appeals. *See, e.g., Valenzuela v. Medina*, No. 10-cv-02681-BNB, 2011 WL 805787, at *4 (D. Colo. Feb. 28, 2011).

As previously stated, Respondents concede Mr. Miner fairly presented subclaim 2(a)(iv)(4) as a question of federal constitutional law in the Colorado Court of Appeals.

Therefore, the Court finds that subclaim 2(a)(iv)(4) is exhausted, and the Court is not persuaded by Respondents' arguments that a petition for writ of certiorari still is necessary to exhaust state remedies in Colorado.  The Court's conclusion is supported by the fact that four circuit courts have determined that state rules similar to Colo. App. R. 51.1 eliminate the need to seek review in the state's highest court in order to satisfy the exhaustion requirement.  *See Lambert v. Blackwell*, 387 F.3d 210, 233 (3d Cir. 2004); *Adams v. Holland*, 330 F.3d 398, 401-03 (6th Cir. 2003); *Randolph v. Kemna*, 276 F.3d 401, 404-05 (8th Cir. 2002); and *Swoopes v. Sublett*, 196 F.3d 1008, 1009-10 (9th Cir. 1999).

Although the United States Court of Appeals for the Tenth Circuit (Tenth Circuit) has not addressed this specific issue, *see Berg v. Foster*, 244 F. App'x 239, 247 (10th Cir. Aug. 6, 2007), Respondents argue that in *Prendergast v. Clements*, 699 F.3d 1182 (10th Cir. 2012), and *Vreeland v. Davis*, 543 F. App'x 739 (10th Cir. 2013), the Tenth Circuit "suggested" that presentation before the state's highest court is necessary to satisfy the exhaustion requirement.  In *Prendergast*, the Tenth Circuit noted that *O'Sullivan* requires a state habeas corpus applicant to present his claim to the state's highest court to satisfy the exhaustion requirement.  *Prendergast*, 699 F.3d at 1184 n.2. In *Vreeland*, the Tenth Circuit noted that an applicant could not have exhausted his federal claims because he was in the process of petitioning the Colorado Supreme Court for certiorari review.  *Vreeland*, 543 F. App'x at 741 (citing *Brown v. Shanks*, 185 F.3d 1122, 1124 (10th Cir. 1999) (exhaustion requires presentation to the highest state court)).  However, absent a definitive holding by the Tenth Circuit on the effect of Colo.

19

App. R. 51.1, this Court holds that Mr. Miner's failure to raise subclaim 2(a)(iv)(4) in a petition for certiorari review to the Colorado Supreme Court does not demonstrate that the claims are unexhausted.  *See Hoeck v. Timme*, No. 13-cv-02575-WJM, 2014 WL 376398, at *6 (D. Colo. Feb. 03, 2014) (unpublished).

The Court finds as a result that subclaim 2(a)(iv)(4) is exhausted.

## G.    Subclaim 2(a)(vi)

In subclaim 2(a)(vi), Mr. Miner asserts cumulative error based upon ineffective assistance of counsel.  ECF No. 13 at 7-8 & n.1.  Although in footnote one Mr. Miner briefly references prosecutorial misconduct and trial court error together with ineffective assistance of counsel, the underlying substance of this cumulative error subclaim is ineffective assistance of counsel.  The actions of counsel that Mr. Miner contends warrant relief under *Strickland* are listed in above subclaims 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), each of which was procedurally defaulted, and in 2(a)(iv), which was exhausted.  In these subclaims, Mr. Miner alleges he had ineffective assistance of counsel because trial counsel failed to conduct sufficient pretrial investigation to 2(a)(iv)(1) seek exclusion of "any mention" of the word "homicide" from the trial (ECF No. 13 at 7), 2(a)(iv)(2) discover a videotaped confession made in the absence of counsel, 2(a)(iv)(3) request an evaluation of the victim's mental condition "to test the credibility of her statements and . . . what actually happened at the scene" (ECF No. 13 at 7-8), and 2(a)(iv)(4) confront the victim "about [the] alleged offense(s)," which would have established the absence of an intent to kill (ECF No. 13 at 8).

In *Miner II*, Mr. Miner fairly presented a different cumulative-error claim. *See* ECF No. 9, ex. E2 at 3-10; ECF No. 9, ex. E3 at 1-3. The instant cumulative-error claim accumulated a different set of allegedly unprofessional acts by counsel, save one. Specifically, counsel's acts challenged in *Miner II* were failure to (1) investigate experts who could rebut, and identify areas for cross-examination of, the prosecution's medical experts (ECF No. 9, ex. E2 at 4-6); (2) cross-examine the victim (ECF No. 9, ex. E2 at 8-9), which Mr. Miner raised and exhausted in subclaim 2(a)(iv)(4) discussed above; and (3) object to alleged prosecutorial misconduct in handling the post-trial disclosure by juror W (ECF No. 9, ex. E2 at 9-10; ECF No. 9, ex. E3 at 1-3).

The sole deficiency common to the cumulative-error claims raised in *Miner II* and in the amended habeas corpus application before the Court is counsel's alleged failure to cross-examine the victim. As noted above in the discussion of subclaim 2(a)(iv)(4), the Court found that Mr. Miner exhausted the claim that counsel was ineffective for failing to cross-examine the victim.

To the extent Mr. Miner bases his cumulative-error subclaim on defaulted subclaims 2(a)(iv)(1), 2(a)(iv)(2), and 2(a)(iv)(3), subclaim 2(a)(vi) is anticipatorily defaulted. The subclaim cannot now be presented to the state courts because the three-year limitation period on state postconviction claims on non-class one felonies has expired, *see* Colo. Rev. Stat. § 16-5-402, and subclaim 2(a)(vi) would be barred under Colo. R. Crim. P. 35(c)(3)(VII). Rule 35(c)(3)(VII) bars Mr. Miner from raising in a postconviction motion a claim that could have been presented in a prior appeal or postconviction proceeding.

21

To the extent a cumulative-error claim raised in a habeas corpus application relies upon defaulted claims of ineffective assistance of counsel, the cumulative error claim itself is defaulted. *Hughs v. Dretke*, 412 F.3d 582, 597 (5th Cir. 2005); *Ray v. Simmons*, 125 F. App'x 943, 947 (10th Cir. 2005). As such, subclaim 2(a)(vi) is procedurally defaulted to the extent it relies on defaulted subclaims 2(a)(iv)(1) to 2(a)(iv)(3). *See Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7. Applicant has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default.

To the extent the cumulative-error subclaim relies upon exhausted subclaim 2(a)(iv)(4) that counsel was ineffective for failure to cross-examine the witness, the cumulative-error subclaim also fails. A cumulative-error analysis applies only if there are at least two errors. *Hooks v. Workman*, 689 F.3d 1148, 1194-95 (10th Cir. 2012). Because there are not at least two errors upon which the cumulative-error subclaim now rests, a cumulative-error analysis is not warranted. *Id.* at 1195. Therefore, the cumulative-error subclaim is without merit.

## H.    Subclaims 2(b) and 2(c)(i)

Respondents argue without discussion that subclaim 2(b), i.e., that there was insufficient evidence Applicant was "involved in anything more than a simple theft[]" (ECF No. 13 at 9), is the same as subclaim 1(d) discussed above, i.e., that the trial court lacked jurisdiction over Applicant's case because there was insufficient evidence he intended to kill the victim; the murder charge was based on the victim's age and "other prejudicial assumptions" (ECF No. 13 at 6). They further point out that since

22

subclaim 1(d) is anticipatorily defaulted, subclaim 2(b) is anticipatorily defaulted.

Respondents also argue that subclaim 2(c)(i), i.e., prosecutorial misconduct in charging attempted first-degree murder solely for the purpose of "aggrandizement in a simply aggravated theft case" (ECF No. 13 at 9), never has been fairly presented to the state courts.

Based upon review of the opening briefs before the Colorado Court of Appeals in *Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E*)*, the Court finds that Mr. Miner failed to raise subclaims 2(b) and 2(c)(i) before the state courts.  Mr. Miner cannot now present subclaims 2(b) and 2(c)(i) to the state courts because the three-year limitation period on state postconviction claims on non-class one felonies has expired, *see* Colo. Rev. Stat. § 16-5-402, and the subclaims would be barred under Colo. R. Crim. P. 35(c)(3)(VII).  Rule 35(c)(3)(VII) bars Mr. Miner from raising in a postconviction motion a claim that could have been presented in a prior appeal or postconviction proceeding. As such, subclaims 2(b) and 2(c)(i) are procedurally defaulted.  *See Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7.  Mr. Miner has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default.

I.      **Subclaims 2(c)(ii)(1), 2(c)(ii)(2), 2(c)(ii)(3), 2(d)(ii), 2(d)(iii), 2(d)(iv), and 2(d)(v)**

In subclaims 2(c)(ii)(1), 2(c)(ii)(2), and 2(c)(ii)(3), Mr. Miner alleges prosecutorial misconduct for (2)(c)(ii)(1) withholding information that juror W. had mentioned to the prosecution, after trial, something about looking at *Gray's Anatomy* during trial (ECF No. 13 at 9); 2(c)(ii)(2) subsequently having an *ex parte* conversation with juror W. (*id.*); and 2(c)(ii)(3) failing to seek a mistrial based on juror W.'s alleged misconduct (*id.*).  In

23

subclaims 2(d)(ii), 2(d)(iii), 2(d)(iv), and 2(d)(v), Mr. Miner alleges judicial bias, in that

the trial judge 2(d)(ii) questioned jurors individually, from the bench, about possible

exposure to extraneous information as a result of juror W.'s disclosure, without

permitting Applicant (or the prosecution) to examine or cross-examine directly and

confront the jurors, and instead "censored" questions submitted by the parties (ECF No.

13 at 10-11); 2(d)(iii) colluded with the prosecution to overlook juror W.'s alleged

misconduct (ECF No. 13 at 9-10); 2(d)(iv) erroneously prohibited the parties from

contacting jurors to investigate their possible exposure to extraneous information (ECF

No. 13 at 10-11); and 2(d)(v) failed to declare a mistrial upon learning that any juror

might have consulted extraneous information (ECF No. 13 at 11).

     These subclaims stem from events following the verdict, which the Colorado

Court of Appeals described in *Miner I* as follows:

> More than three weeks after the jury returned its verdict, the People filed a "Disclosure of Post-Verdict Contact." This disclosure informed the court that the prosecutor had spoken with two jurors after the verdict, and that one of the jurors [juror W.] had made a vague comment about having looked at *Gray's Anatomy* during the trial. The court scheduled a hearing on the matter for December 15, 2006. Defendant moved for discovery related to the jurors' possible exposure to extraneous information, requesting that the prosecutor disclose the jurors' names and the full substance of his conversations with the jurors.
>
> At the hearing, the court granted defendant's discovery motion, but, over defendant's objection, prohibited either party from initiating any communication with any of the jurors pending further court order. In its subsequent written order, the court stated that it would conduct its "own inquiry of each juror separately [at each juror's convenience] . . . in open court, on the record," and with representatives of both parties present. The court invited the attorneys to submit written questions to ask the jurors.

24

At subsequent hearings, the court questioned each juror separately, under oath, and with both parties' attorneys present.  At the first hearing, before the first juror was brought in, the court considered the admissibility of the parties' proposed questions for the jurors. The court also told the attorneys that if they would like to ask follow up questions of a juror, it would hold a bench conference to discuss those questions prior to asking them.  At the end of each hearing, the court instructed each juror not to discuss the matter with any of the other jurors.

ECF No. 15 at 27-28; ECF No. 9, ex. H at 23-25; *see also* ECF No. 9, ex. A at 5-6.

Respondents assert that because the prosecutor's vacation began immediately after trial, the prosecutor did not report juror W.'s comment to the court until after returning from vacation, twenty-three days later.  ECF No. 9, ex. E5 at 1; ECF No. 9, ex. I at 17.  When juror W. received a post-trial subpoena to testify, she contacted the prosecutor to ask the reason for the subpoena.  ECF No. 15 at 29.  The prosecutor told juror W. she was not in trouble.  *Id.*  Juror W. then told the prosecutor she had wanted to, but did not, look at *Gray's Anatomy* during trial.  *Id.*  This conversation occurred before the trial court prohibited either side from juror contact outside of court hearings. ECF No. 9, ex. E4 at 2; ECF No. 9, ex. I at 17-18; ECF No. 9, ex. A at 5-6.

In post-verdict hearings, the trial court asked each juror individually whether he or she had been exposed to extraneous information.  ECF No. 9, ex. I at 18; ECF No. 15 at 29.  As part of the inquiry, the court invited both sides to submit proposed questions.  ECF No. 15 at 29.  After the hearings, the trial court concluded that the jury had not been improperly exposed to extraneous information.  ECF No. 9, ex. I at 19; ECF No. 9, ex. A at 5.

On January 24, 2007, Applicant moved for a new trial following the trial court's hearings and resolution on this issue.  ECF No. 9, ex. J (motion for new trial).  The motion was denied on January 26, 2007, the day of the last trial court hearing on the issue.  ECF No. 9, ex. A at 5.

1.   Subclaim 2(c)(ii)(1)

Respondents argue that subclaim 2(c)(ii)(1), which asserts prosecutorial misconduct in withholding information that juror W. had mentioned to the prosecution, after trial, *i.e.*, something about looking at *Gray's Anatomy* during trial (ECF No. 13 at 9), is procedurally defaulted.  In *Miner II*, Applicant argued that the prosecution's twenty-three day delay in reporting juror W's reference to looking at *Gray's Anatomy* during trial violated due process.  ECF No. 9, ex. E4 at 3; ECF No. 9, ex. E5 at 1; ECF No. 9, ex. E6 at 2; ECF No. 9, ex. E7 at 1; ECF No. 9, ex. E8 at 1.  However, the Colorado Court of Appeals declined to consider the argument because it either had been raised on direct appeal pursuant to Colo. R. Crim. P. 35(c)(3)(VI), or could have been raised on direct appeal pursuant to Colo. R. Crim. P. 35(c)(3)(VII).  *See* ECF No. 9, ex. D at 4-5.  The Colorado Court of Appeals noted in *Miner II* that its opinion issued on direct appeal in *Miner I* specifically addressed the post-verdict juror hearings from which the claim of prosecutorial misconduct originated.  *Id.*

Because subclaim 2(c)(ii)(1) was not raised in *Miner I*, *see* ECF No. 9, ex. I, the claim is barred under Colo. R. Crim. P. 35(c)(3)(VII).  The subclaim is precluded from federal review as defaulted in state court on an independent and adequate state procedural ground unless Applicant can demonstrate cause for the default and actual prejudice as a result of the federal violation, or demonstrate that failure to consider the

claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750; *Cummings*, 506 F.3d at 1224.  Mr. Miner has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default or a fundamental miscarriage of justice.  Thus, subclaim 2(c)(ii)(1) is procedurally defaulted.

2.    Subclaims 2(c)(ii)(2) and 2(c)(ii)(3)

In subclaims 2(c)(ii)(2) and 2(c)(ii)(3), Mr. Miner alleges prosecutorial misconduct in 2(c)(ii)(2) for having an ex parte conversation with juror W. subsequent to trial (ECF No. 13 at 9); and 2(c)(ii)(3) failing to seek a mistrial based on juror W.'s alleged misconduct (*id.*).  In *Miner II*, Applicant argued to the Colorado Court of Appeals that the prosecutor had an ex parte conversation with juror W., and failed to seek a mistrial upon hearing juror W.'s initial comment, both in violation of due process.  ECF No. 9, ex. E5 at 1; ECF No. 9, ex. E6 at 1-2.

Respondents argue that because Mr. Miner omitted these subclaims from his petition for writ of certiorari to the Colorado Supreme Court in *Miner II*, the subclaims are unexhausted.  *See* ECF No. 9, ex. C at 4, 7.  For the reasons discussed in the section on subclaim 2(a)(iv)(4) above and reiterated here, the Court disagrees.

Respondents are correct that, in order to exhaust state court remedies, a claim must be presented to the state's highest court if review in that court is available.  *See O'Sullivan*, 526 U.S. at 845.  However, "there is nothing in the exhaustion doctrine requiring federal courts to ignore a state law or rule providing that a given procedure is not available."  *Id*. at 847-48.  Therefore, if a state articulates that a certain avenue for relief is not part of its standard appellate review process, it is not necessary for a defendant to pursue that avenue in order to exhaust state remedies.  *See id.*

The State of Colorado has articulated that review in the Colorado Supreme Court is not part of the standard state appellate review process.  More specifically, the Colorado Appellate Rules provide that:

> In all appeals from criminal convictions or postconviction relief matters from or after July 1, 1974, a litigant shall not be required to petition for rehearing and certiorari following an adverse decision of the Court of Appeals in order to be deemed to have exhausted all available state remedies respecting a claim of error.  Rather, when a claim has been presented to the Court of Appeals or Supreme Court, and relief has been denied, the litigant shall be deemed to have exhausted all available state remedies.

Colo. App. R. 51.1.  Pursuant to Colo. App. R. 51.1, the Court finds that review in the Colorado Supreme Court is not required to exhaust state remedies if the claim in question was presented fairly to, and relief was denied by, the Colorado Court of Appeals.  *See, e.g., Valenzuela*, No. 10-cv-02681-BNB, 2011 WL 805787, at *4.

Respondents concede Mr. Miner fairly presented subclaims 2(c)(ii)(2) and 2(c)(ii)(3) as a question of federal constitutional law in the Colorado Court of Appeals.  *See* ECF No. 9, ex. E5 at 1; ECF No. 9, ex. E6 at 1-2.  Therefore, the Court finds that subclaims 2(c)(ii)(2) and 2(c)(ii)(3) are exhausted, and the Court is not persuaded by Respondents' arguments that a petition for writ of certiorari still is necessary to exhaust state remedies in Colorado.  The Court's conclusion is supported by the fact that four circuit courts have determined that state rules similar to Colo. App. R. 51.1 eliminate the need to seek review in the state's highest court in order to satisfy the exhaustion requirement.  *See Lambert*, 387 F.3d at 233; *Adams*, 330 F.3d at 401-03; *Randolph*, 276 F.3d at 404-05; and *Swoopes*, 196 F.3d at 1009-10.

Although the Tenth Circuit has not addressed the specific issue, *see Berg*, 244
F. App'x at 247, Respondents argue that in *Prendergast v. Clements*, 699 F.3d 1182
(10th Cir. 2012), and *Vreeland v. Davis*, 543 F. App'x 739 (10th Cir. 2013), the Tenth
Circuit "suggested" that presentation before the state's highest court is necessary to
satisfy the exhaustion requirement.  In *Prendergast*, the Tenth Circuit noted that
*O'Sullivan* requires a state habeas corpus applicant to present his claim to the state's
highest court to satisfy the exhaustion requirement.  *Prendergast*, 699 F.3d at 1184 n.2.
In *Vreeland*, the Tenth Circuit noted that an applicant could not have exhausted his
federal claims because he was in the process of petitioning the Colorado Supreme
Court for certiorari review.  *Vreeland*, 543 F. App'x at 741 (citing *Brown*, 185 F.3d at
1124) (exhaustion requires presentation to the highest state court)).  However, absent a
definitive holding by the Tenth Circuit on the effect of Colo. App. R. 51.1, this Court
holds that Mr. Miner's failure to raise subclaims 2(c)(ii)(2) and 2(c)(ii)(3) in a petition for
certiorari review to the Colorado Supreme Court does not demonstrate that the claims
are unexhausted.  *See Hoeck*, No. 13-cv-02575-WJM, 2014 WL 376398, at *6.

The Court finds that subclaims 2(c)(ii)(2) and 2(c)(ii)(3) are exhausted.

3.      Subclaims 2(d)(ii) and 2(d)(iv)

Applicant asserts judicial bias because the trial judge 2(d)(ii) questioned jurors
individually, from the bench, about possible exposure to extraneous information as a
result of juror W.'s disclosure, without permitting Applicant (or the prosecution) to
examine or cross-examine directly and confront the jurors, and instead "censored"
questions submitted by the parties (ECF No. 13 at 10-11), and 2(d)(iv) erroneously
prohibited the parties from contacting jurors to investigate their possible exposure to

29

extraneous information (ECF No. 13 at 10-11).

In *Miner I*, Applicant did not challenge the trial court's decision to hold post-trial hearings to question each juror about potential exposure to extraneous information; rather, he argued the trial court erred by precluding the parties from contacting the jurors before the hearings and by directing the parties to submit questions for the court to ask.  ECF No. 9, ex. I at 32-37; ECF No. 9, ex. G at 10-12.  As part of this argument, Mr. Miner asserted the existence of a constitutional right to a hearing to prove impermissible bias on the part of one or more jurors.  ECF No. 9, ex. I at 34.  Mr. Miner did not claim he was not provided with such a hearing.  Rather, he expressed dissatisfaction with the formal manner in which the court conducted the hearing.

Respondents argue these are anticipatorily defaulted.  The Court disagrees.  Mr. Miner raised substantially the same claims before the state courts that he raises here. Therefore, the Court finds that subclaims 2(d)(ii) and 2(d)(iv) were exhausted in *Miner I*.

      4.    <u>Subclaim 2(d)(iii)</u>

In subclaim 2(d)(iii), Mr. Miner alleges judicial bias because the trial judge colluded with the prosecution to overlook juror W.'s alleged misconduct in looking at *Gray's Anatomy* during trial.  (ECF No. 13 at 9-10).  Respondents argue that Mr. Miner never presented this claim fairly to the state courts.  Based upon review of the opening briefs before the Colorado Court of Appeals in *Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E*)*, the Court agrees that Mr. Miner failed to raise subclaim 2(d)(iii) before the state courts.

Mr. Miner cannot now present subclaim 2(d)(iii) to the state courts because the three-year limitation period on state postconviction claims on non-class one felonies

has expired, *see* Colo. Rev. Stat. § 16-5-402, and the subclaim would be barred under

Colo. R. Crim. P. 35(c)(3)(VII).  Rule 35(c)(3)(VII) bars Mr. Miner from raising in a

postconviction motion a claim that could have been presented in a prior appeal or

postconviction proceeding.  As such, subclaim 2(d)(iii) is procedurally defaulted.  *See*

*Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7.  Mr. Miner has not

made the necessary showing of cause and prejudice or actual innocence to excuse his

procedural default.

     5.     Subclaim 2(d)(v)

In subclaim 2(d)(v), Mr. Miner alleges judicial bias because the trial judge failed

to declare a mistrial upon learning that any juror might have consulted extraneous

information (ECF No. 13 at 11).

Respondents argue that Mr. Miner never presented subclaim 2(d)(v) fairly to the

state courts a claim of a constitutional violation stemming from the trial court's failure to

declare a mistrial upon learning of juror W.'s comment about looking at *Gray's*

*Anatomy*.  Based upon review of the opening briefs before the Colorado Court of

Appeals in *Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E*)*, the Court agrees

that Mr. Miner failed to raise subclaim 2(d)(v) before the state courts.  Instead, he

asserted in *Miner II* that the prosecutor failed to "call[ ] for a mistrial" after learning of

juror W's comment about looking at *Gray's Anatomy*, ECF No. 9, ex. E5 at 1, as did

Applicant's defense counsel.  ECF No. 9, ex. E8 at 1.

Mr. Miner cannot now present subclaim 2(d)(v) to the state courts because the

three-year limitation period on state postconviction claims on non-class one felonies

has expired, *see* Colo. Rev. Stat. § 16-5-402, and the subclaim would be barred under

Colo. R. Crim. P. 35(c)(3)(VII). Rule 35(c)(3)(VII) bars Mr. Miner from raising in a

postconviction motion a claim that could have been presented in a prior appeal or

postconviction proceeding. As such, subclaim 2(d)(v) is procedurally defaulted. *See*

*Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7. Mr. Miner has not

made the necessary showing of cause and prejudice or actual innocence to excuse his

procedural default.

**J.    Subclaim 2(d)(i)**

In subclaim 2(d)(i), Mr. Miner alleges judicial bias because the trial judge

erroneously ruled Applicant validly waived his *Miranda* rights prior to his police

interview, even though Mr. Miner did not understand that a lawyer would be appointed

for him at state expense if he requested one, thereby permitting introduction of

Applicant's videotaped statement in the absence of counsel (ECF No. 13 at 9-10).

Respondents argue Mr. Miner failed to present fairly to the state courts in either

*Miner I* or *Miner II* a claim of unconstitutional judicial bias based upon any ruling by the

trial judge. However, Respondents concede Mr. Miner did argue in *Miner I* that the

waiver of his right to counsel during police interrogation was not knowing and intelligent,

such that his videotaped statement was taken in violation of his Fifth Amendment

privilege against self-incrimination. ECF No. 9, ex. I at 26-31; ECF No. 9, ex. G at 8-9.

Based upon review of the opening briefs before the Colorado Court of Appeals in

*Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E*)*, the Court finds that Mr. Miner

failed to raise before the state courts a claim of unconstitutional judicial bias based

upon the trial judge's erroneous ruling that Applicant validly waived his *Miranda* rights

prior to his police interview, even though Mr. Miner did not understand that a lawyer

would be appointed for him at state expense if he requested one, thereby permitting introduction of Applicant's videotaped statement in the absence of counsel.

To the extent Mr. Miner alleges such judicial bias, subclaim 2(d)(i) is anticipatorily defaulted.  Mr. Miner cannot now present the judicial bias portion of subclaim 2(d)(i) to the state courts because the three-year limitation period on state postconviction claims on non-class one felonies has expired, *see* Colo. Rev. Stat. § 16-5-402, and subclaim 2(d)(i) asserting judicial bias would be barred under Colo. R. Crim. P. 35(c)(3)(VII). Rule 35(c)(3)(VII) bars Mr. Miner from raising in a postconviction motion a claim that could have been presented in a prior appeal or postconviction proceeding.  As such, subclaim 2(d)(i) asserting judicial bias is procedurally defaulted.  *See Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7.  Mr. Miner has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default.

However, to the extent Mr. Miner contends the waiver of his right to counsel during police interrogation was not knowing and intelligent, such that his videotaped statement was taken in violation of his Fifth Amendment privilege against self-incrimination, subclaim 2(d)(i) is exhausted.

## K.   Subclaim 2(e)

In subclaim 2(e), Mr. Miner contends the jury was exposed to extraneous information, as evidenced by a comment by juror W. in a post-trial discussion with one of the prosecutors making reference to looking at *Gray's Anatomy* (ECF No. 13 at 9). Respondents concede Mr. Miner fairly presented subclaim 2(e) as a constitutional violation to the Colorado Court of Appeals in *Miner II*.  ECF No. 9, ex. E3 at 4-5; ECF

No. 9, ex. E4 at 1-4.  However, the Colorado Court of Appeals declined to consider the argument because it either had been raised on direct appeal pursuant to Colo. R. Crim. P. 35(c)(3)(VI), or could have been raised on direct appeal pursuant to Colo. R. Crim. P. 35(c)(3)(VII).  *See* ECF No. 9, ex. D at 4-5.  The Colorado Court of Appeals noted in *Miner II* that its opinion issued on direct appeal in *Miner I* specifically addressed the post-verdict juror hearings from which the claim of juror misconduct originated.  *Id.*

A review of the opening brief before the Colorado Court of Appeals in *Miner I* (ECF No. 9, ex. I) reveals that Mr. Miner did not raise the argument in *Miner I*.  Instead, he raised in *Miner I* the subclaims 2(d)(ii) and 2(d)(iv) discussed above challenging the format of the trial court's post-verdict hearings questioning jurors about their possible exposure to extraneous information, the court's censorship of questions submitted by the parties, and the court's prohibition of the parties' contact with jurors outside the hearings.

Because subclaim 2(e) was not raised in *Miner I*, the claim is barred under Colo. R. Crim. P. 35(c)(3)(VII).  The subclaim is precluded from federal review as defaulted in state court on an independent and adequate state procedural ground unless Applicant can demonstrate cause for the default and actual prejudice as a result of the federal violation, or demonstrate that failure to consider the claim will result in a fundamental miscarriage of justice.  *Coleman*, 501 U.S. at 750; *Cummings*, 506 F.3d at 1224.  Mr. Miner has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default or a fundamental miscarriage of justice.  Thus, subclaim 2(e) is procedurally defaulted.

**L.      Subclaims 3(a) and 3(b)**

As his third and final claim 3, Mr. Miner asserts violations of the Fourth

Amendment.  He alleges in subclaim 3(a) that he was in "physical and psychological

distress" and did not consent to the search at the time it was conducted (ECF No. 13 at

11), and in subclaim 3(b) that officers obtained consent to search from his wife by being

"deliberately deceitful" and "us[ing] pressure" on her to gain entry (*id.*).  Claim 3 also

complains that all evidence seized during the search of his home "was in violation of the

Chain of Custody," and that the search essentially forced his wife to testify against him

(*id.*).

Respondents maintain subclaim 3(a) is a restatement of subclaim 1(a), in which

Mr. Miner asserts that the trial court "did not have jurisdiction" over his criminal case

because he was arrested at gunpoint and "in fear of physical retribution" by arresting

officers, such that any statements he made during the arrest were coerced.  ECF No.

13 at 5.  Therefore, Respondents concede subclaim 3(a) is exhausted because they

concede subclaim 1(a) is exhausted.

Respondents also maintain subclaim 3(b) is a restatement of subclaim 1(c) in

which Mr. Miner argues that the trial court "did not have jurisdiction" over his criminal

case because the search of his home was without a warrant, and the consent of his

wife was coerced "under Color of Authority" in violation of constitutional rights and a

state statute.  ECF No. 13 at 5.  Therefore, Respondents contend subclaim 3(b) is

procedurally defaulted because subclaim 1(c) is procedurally defaulted.  The Court

agrees.

Finally, Respondents argue that Mr. Miner did not present his chain-of-custody or spousal-privilege arguments to the Colorado Court of Appeals in *Miner I* or *Miner II*. Based upon review of the opening briefs before the Colorado Court of Appeals in *Miner I* (ECF No. 9, ex. I) and *Miner II* (ECF No. 9, ex. E*)*, the Court agrees that Mr. Miner failed to present his chain-of-custody or spousal-privilege arguments before the state courts.

Mr. Miner cannot now present subclaim 3(b) or his chain-of-custody or spousal-privilege arguments as federal constitutional claims to the state courts because the three-year limitation period on state postconviction claims on non-class one felonies has expired, *see* Colo. Rev. Stat. § 16-5-402, and subclaim 3(b) and the chain-of-custody and spousal-privilege arguments would be barred under Colo. R. Crim. P. 35(c)(3)(VII).  Rule 35(c)(3)(VII) bars Mr. Miner from raising in a postconviction motion a claim that could have been presented in a prior appeal or postconviction proceeding. As such, subclaim 3(b), the chain-of-custody argument, and the spousal-privilege argument are procedurally defaulted.  *See Coleman*, 501 U.S. at 735 n.1; *Anderson*, 476 F.3d at 1139 n.7.  Mr. Miner has not made the necessary showing of cause and prejudice or actual innocence to excuse his procedural default.

## IV.  CONCLUSION

The Court finds that Mr. Miner subclaims and arguments are exhausted, without merit, procedurally defaulted, and insufficiently pleaded as follows:

1.      Subclaims 1(a), 2(a)(iv)(4), 2(c)(ii)(2), 2(c)(ii)(3), the portion of subclaim 2(d)(i) alleging Applicant's waiver of his right to counsel during police interrogation was not knowing and intelligent, and subclaims 2(d)(ii), 2(d)(iv), 3(a) are exhausted;

2.      Subclaim 2(a)(vi) is without merit and will be dismissed;

3.      Subclaims 1(b), 1(c), 1(d), 1(e), 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), 2(a)(v),

2(b), 2(c)(i), 2(c)(ii)(1), the portion of subclaim 2(d)(i) alleging judicial bias

stemming from the trial court's determination that Applicant's waiver of his right

to counsel during police interrogation was valid, subclaims 2(d)(iii), 2(d)(v), 2(e),

and 3(b) and the chain-of-custody and spousal-privilege arguments are

procedurally defaulted and will be dismissed; and

4.      Subclaims  2(a)(i), 2(a)(ii), and 2(a)(iii) are insufficiently pleaded and will

be dismissed.

Accordingly, it is ORDERED that

1.      Subclaim 2(a)(vi) is without merit and dismissed;

2.      Subclaims 1(b), 1(c), 1(d), 1(e), 2(a)(iv)(1), 2(a)(iv)(2), 2(a)(iv)(3), 2(a)(v),

2(b), 2(c)(i), 2(c)(ii)(1), the portion of subclaim 2(d)(i) alleging judicial bias

stemming from the trial court's determination that Applicant's waiver of his right

to counsel during police interrogation was valid, subclaims 2(d)(iii), 2(d)(v), 2(e),

and 3(b) and the chain-of-custody and spousal-privilege arguments are

procedurally defaulted and dismissed; and

3.      Subclaims 2(a)(i), 2(a)(ii), and 2(a)(iii) are insufficiently pleaded and

dismissed.  It is

FURTHER ORDERED that **within thirty days after the filing of the state court**

**record**, Respondents are directed to file an answer in compliance with Rule 5 of the

Rules Governing Section 2254 Cases that fully addresses the merits of the remaining

exhausted subclaims 1(a), 2(a)(iv)(4), 2(c)(ii)(2), 2(c)(ii)(3), the portion of subclaim

2(d)(i) alleging Applicant's waiver of his right to counsel during police interrogation was not knowing and intelligent, and subclaims 2(d)(ii), 2(d)(iv), and 3(a).  It is

FURTHER ORDERED that a traverse, if any, and only a traverse, may be filed **within thirty days of the filing of the answer**.

Dated this 3rd day of November, 2014.

BY THE COURT:

William J. Martinez
United States District Judge